IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No: 4:21-cr-00173-SAL |
| vs. | |
| **THEODORE WOOLINGS BYE, III** | <u>**SENTENCING MEMORANDUM**</u> |

On December 8, 2021, Defendant Theodore Woolings Bye, III pled guilty to sexually coercing and enticing Minor Victim 1. The United States submits this memorandum in support of a significant sentence in this case: 293 months, or the high end of the applicable Guidelines range, to be followed by lifetime supervision. Such a sentence is warranted for the reprehensible conduct here, among other reasons, to reflect the seriousness of the offense, to adequately deter criminal conduct by this defendant and others like him, and to protect the public from further crimes by Bye.

**I.     BACKGROUND.[1]**

This case initially began from the Arizona home office of co-Defendant Hart Grow, who was part of a group of men who sexually exploited and trafficked Minor Victim 1. The operation, while deeply atrocious and far-reaching, was relatively simple. Minor Victim 1 was just about to turn 16 years old when Grow, posing online as a 17-year-old girl named Hannah, found her on a message board discussing her feelings about her sexual identity. Grow knew Minor Victim 1's age and offered a support system for her, which he used to manipulate Minor Victim 1 into having feelings for "Hannah." Exploiting these feelings, Grow convinced Minor Victim 1 to enter into a

---

[1] The PSR in this case lays out the facts in some detail, and the Government agrees with those factual summaries. Thus, for the purpose of this memorandum, the Government highlights the most relevant facts and other key information from the discovery in the case.

sexual dominant/submissive relationship, which included forcing Minor Victim 1 to have sex with men and send recordings of those encounters to him. Minor Victim 1 both feared and wanted to please "Hannah." Minor Victim 1 also knew that "Hannah" had numerous sexually explicit images of her and knew where she lived. Minor Victim 1 was hopeless, scared, and trapped. She relented.

Minor Victim 1 lived wither her parents in Myrtle Beach, and Grow would traffic her while her parents were away or were asleep down the hall. In sexually trafficking Minor Victim 1, Grow initially posted images on message boards offering Minor Victim 1 up to adult males for sex in exchange for the adult males actively engaging in the production of videos of the sexual acts, and ensuring those videos were sent to Grow. Among the first customers was co-Defendant Theodore Woolings Bye, III.

Bye became infatuated with Minor Victim 1, and he began effectively acting as the middleman for Grow. Although Bye also knew Minor Victim 1's age, he would nonetheless arrange for men to have sex with her in exchange for the men agreeing to engage in the production of sexually explicit videos to be sent to Grow. Further, Bye would make sadistic videos of Minor Victim 1 for Grow and would himself use Minor Victim 1 as his own sexual plaything.

Among the encounters arranged by Bye were those with co-Defendants Sanadin Mohamed Elrayes and Charles Joseph Spillane. Each of these men eagerly responded to Bye's solicitation, agreed to actively engage in the production of sexually explicit videos with Minor Victim 1 to be sent to Grow, and in exchange for this agreement they were given the opportunity to have sex with Minor Victim 1. Although there is evidence in the record that Elrayes and Spillane were told Minor Victim 1 was 18, the facts and surrounding circumstances show neither Elrayes nor Spillane spent a second alone with Minor Victim 1 as Bye was an active participant in their sexual congress. Spillane nor Elrayes ever asked if Minor Victim 1 was a willing participant and neither ever asked

if she was OK. Spillane and Elrayes plotted their fantasies exclusively with Bye. In their messages with Bye, they reveled in the opportunity to do what they pleased with Minor Victim 1 with little regard to her willingness or age.

These four Defendants debased, abused, and exploited Minor Victim 1 for the sake of their own sexual pleasure. From this inexperienced child, they stole her first love, her virginity, and her dignity.

For the following reasons, the Government respectfully requests that the Court issue a sentence at the top end of the Guidelines range, and the Government submits that a such a sentence is sufficient but not greater than necessary to achieve the purposes of punishment as set forth in 18 U.S.C. § 3553.

## II.     A SUBSTANTIAL, HIGH-END GUIDELINES SENTENCE IS APPROPRIATE.

The sentencing statute, 18 U.S.C. § 3553(a), requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[2] In order to determine the "particular" sentence to impose, the Court must consider the familiar statutory factors listed in §3553(a)(1)-(7). Two of the statutory factors that the Court must consider are (1) the advisory guidelines range set by the Sentencing Guidelines and (2) the Commission's policy statements are factors to be considered. *See* §3553(a)(4) and (a)(5). Further, the Advisory Sentencing Guidelines "should be the starting point and the initial benchmark" in determining the appropriate sentence. *See Gall v. United States*, 522 U.S. 38 (2007). Here, as explained below, the

---

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

§ 3553(a) factors weigh in favor of a sentence that is no less than the high-end of the Guidelines range with lifetime supervision to follow.

    A.    **<u>Nature of Offense and History and Characteristics of Defendant--§3553(a)(1).</u>**

        i.    <u>Nature of Offense</u>

Bye's criminal offenses were premeditated and meticulously planned. Bye would often pick Minor Victim 1 up at her parents' home. In his first encounter with her, he took her virginity and sent those videos to Grow. *See* PSR ¶¶ 47, 68, 80. Recovered messages confirm Grow demanded she make content whenever she was with Bye, and that Bye began trafficking Minor Victim 1 on Grow's behalf. *See* PSR ¶¶ 32, 53(c), 56(a). Within days of Grow's direction that she make content with Bye, the following images and videos were produced:

- An image of Minor Victim 1 fully nude with her genitals exposed and the word "WORTHLESS' written in blue marker across her lower abdomen. The upper area of her vaginal area had numerous open cuts. *See* PSR ¶ 52(e).

- Several videos of Bye inserting a safety pin into Minor Victim 1's vagina and pinning her vaginal lips together. *See* PSR ¶ 52(bb)-(dd). She expressly says she has changed her mind and did not want to engage in the activity. *Id*. Although not referenced in the PSR, the Government has viewed the video and can represent that when Minor Victim 1 begins to express her desire to stop, Bye tells her she should engage in the activity for Hannah.

Bye's sexual exploitation of Minor Victim 1 occurred under her parents' nose, and he snuck her out of their home to engage in his sexual exploitation. *See* PSR ¶¶ 31, 47, 48, 68.

There may be no crimes worse than sexual abuse of a minor. Here, Bye engaged in extensive emotional manipulation and hands-on sexual exploitation of a child. This type of abuse and manipulation has far-reaching effects on the development of the child that may never be fully understood. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (affirming as

reasonable a 100-year sentence for a first offender who sexually abused a 13-year-old girl and took photos of it).

Although Bye pled when confronted with the overwhelming evidence of his guilt, it was too little too late. More than anyone else, Bye had direct knowledge of Minor Victim 1's plight and was in the best position to stop her abuse and rescue her. Rather than a helping hand, he slapped her, kicked her, restrained her, mutilated her genitals, and defaced her body with derogatory language. *See* PSR ¶¶ 53, 69, 71. He became a monster that would be the voice, face, and embodiment of her torment.

It is clear that the nature of the offense justifies a substantial sentence no less than the high end of the Guidelines range.

### ii.     History and Characteristics of the Defendant

Bye has 2004 conviction for Crimes Against Nature involving what appears to be a female victim. PSR ¶ 97. He followed this conviction with a drug-related felony for which it appears he served a year in prison and was on probation until 2019. PSR ¶ 98. Clearly, Bye has no trouble breaking the law when it suits his needs and desires. The Government expects Bye to speak about various maladies and trauma at sentencing, but these would be self-serving at this stage. Moreover, it would do little to mitigate against the horrors Bye inflicted. There is simply nothing in Bye's past that mitigates the severity of his offense to the degree that any type of reduced sentence is appropriate.

### B.     Need for the Sentence Imposed To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense – §3553(a)(2)(A).

An adult man engaging in an illegal sexual conduct with a troubled teenage girl is committing an extremely serious crime. This is a terrible crime, and a significant sentence is

necessary to reflect its seriousness, to promote respect for the law, and to provide just punishment for this calculated sexual offense.

    **C.    Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct – §3553(a)(2)(B).**

As noted above, Bye planned and executed his crimes over a lengthy period of time and—but for the intervention of law enforcement—would have continued to violate Minor Victim 1. Crimes like Bye's often involve children (like Minor Victim 1 here) who take elaborate steps to avoid detection by their parents and caregivers. These crimes prey on vulnerable victims and can be very difficult to detect—just as Bye's exploitation of Minor Victim 1 went undetected for months until law enforcement discovered Minor Victim 1's relationship with Bye. Because detection of these serious crimes is so difficult, severe sentences are necessary to deter them. For that reason, too, this Court should impose a substantial sentence in this case.

    **D.    Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant – §3553(a)(2)(C).**

Sex crimes against children are among the vilest crimes and this Court should take particular care to protect the public from men who commit them. "Sex offenders are a serious threat in this Nation." *McKune v. Lile*, 536 U.S. 24, 32 (2002). For example, between 1980 and 1994, the population of imprisoned sex offenders increased at a faster rate than for any other category of violent crime. *Id*. (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 18 (1997) (hereinafter Sex Offenses); U.S. Dept. of Justice, Federal Bureau of Investigation, Crime in the United States, 1999, Uniform Crime Reports 24 (2000)). "As in the present case, the victims of sexual assault are most often juveniles. When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Id*. Additionally, the U.S. Sentencing Commission reports, likely

as a result of the increase in technology, a 422% increase in the number of offenses involving the production of sexually explicit images of children. *See* U.S. Sentencing Commission, Federal Sentencing of Child Pornography: Production Offenses 3 (October 2021) (hereinafter Production Offenses). There is an acute need to protect both the minor victims and the general public from Bye's future criminal conduct.  The only way to do that is to impose a substantial sentence in this case.

### E. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct – §3553(a)(6).

Substantial sentences are routine in human trafficking and child exploitation cases, particularly those involving the production of child pornography. *See* Production Offenses at 3 ("Child pornography production offenders generally received lengthy sentences."). Thus, a substantial sentence at no less than the high-end of the Guidelines range would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### III. CONCLUSION.

Bye put into physical motion the depraved plans of Grow, and further used Minor Victim 1 to fulfill his own sexual desires. She was nothing more than a commodity to Bye. For all the reasons set forth in 18 U.S.C. § 3553(a), this Court should impose a significant sentence of no less than the high end of the applicable Guidelines range to be followed by lifetime supervision.

        RESPECTFULLY SUBMITTED,

        COREY F. ELLIS
        UNITED STATES ATTORNEY

BY:  /s/ *Derek A. Shoemake*
      Derek A. Shoemake (Fed. Id. 10825)
      Assistant U.S. Attorney
      401 West Evans Street, Room 222
      Florence, South Carolina 29501
      (843) 665-6688
      Derek.Shoemake@usdoj.gov

BY:  /s/ *Amy Bower*
      Amy F. Bower (Fed. Id. 11784)
      Assistant U.S. Attorney
      151 Meeting Street, Suite 200
      Charleston, South Carolina 29401
      (843) 727-4381
      Amy.Bower@usdoj.gov

Florence, S.C.
June 14, 2022